**IN THE CIRCUIT COURT OF DESOTO COUNTY, MISSISSIPPI**

**KRISTEN LAMBERT, AS MOTHER AND NATURAL GUARDIAN OF M.F.L., A MINOR** — **PLAINTIFF**

**VS.** — **CAUSE NO.** CI2018-364GCD

**PEPPERIDGE FARMS, INC.; ASSOCIATED MILK PRODUCERS, INC. and JOHN DOES 1-5** — **DEFENDANTS**

**JURY TRIAL DEMANDED**

---

**COMPLAINT**

---

Plaintiff, Kristen Lambert (hereinafter "Plaintiff"), by and through her undersigned attorneys, hereby brings this Complaint for damages on behalf of her minor daughter, M.F.L., against Defendants Pepperidge Farms, Inc. (hereinafter "Pepperidge Farms") and Associated Milk Producers, Inc. (hereinafter "AMPI"), and alleges the following:

**PARTIES**

1. Plaintiff Kristen Lambert is an adult resident of Prentiss County, Mississippi. Lambert is the natural mother, guardian and custodian of M.F.L., a minor.

2. Defendant Pepperidge Farms is a Connecticut corporation with its principal place of business and corporate headquarters located in Norwalk, Connecticut. Pepperidge Farms is a subsidiary of the Campbell Soup Company, a New Jersey corporation with its principal place of business and corporate headquarters located in Camden, New Jersey.

3. Defendant AMPI is a Kansas corporation with its principal place of business and corporate headquarters located in New Ulm, Minnesota.






## JURISDICTION AND VENUE

4. The incident that is the subject matter of this litigation occurred in Olive Branch, DeSoto County, Mississippi, when the minor child consumed contaminated food. The Plaintiffs herein are seeking compensatory and other damages in an amount in excess of Two Hundred Dollars ($200.00). Therefore, pursuant to Section 9-7-81 of the Mississippi Code of 1972, as amended, original jurisdiction of this matter is in the Circuit Court of DeSoto County, Mississippi.

5. Venue is proper pursuant to Mississippi Code Annotated Section 11-11-3 because a substantial alleged act or omission and a substantial event that caused the injury occurred in DeSoto County, Mississippi.

6. The Circuit Court of DeSoto County, Mississippi has subject matter jurisdiction of this civil action and venue is proper in this Court. Further, this Court may exercise in personam jurisdiction over the Defendants, because the Defendants conduct business within the State of Mississippi.

7. The Plaintiffs herein demand a jury trial of this civil action pursuant to Rule 38 of the Mississippi Rules of Civil Procedure as is their right pursuant to Article III, Section 31 of the Mississippi Constitution of 1890.

## FACTUAL ALLEGATIONS

8. Pepperidge Farms isthe baked goods division of Campbell Soup Company and the exclusive manufacturer and seller of Goldfish® crackers.

9. At all relevant times hereto, Pepperidge Farms was engaged in the business of manufacturing, marketing, distributing, supplying, and/or selling Goldfish® crackers.

10. Certain varieties of Goldfish® crackers contain a dry whey powder ingredient manufactured by AMPI and used by Pepperidge Farms to season the crackers.

11. On July 23, 2018, Pepperidge Farm issued a recall on four varieties of Goldfish® crackers. The recall announcement posted by the Food and Drug Administration (FDA) states, "Pepperidge Farm has been notified by one of its ingredient suppliers that whey powder in a seasoning that is applied to four varieties of crackers has been the subject of a recall by the whey powder manufacturer due to the potential presence of *Salmonella.*"

12. On July 25, 2018, AMPI recalled certain lots of the dry whey powder. The recall, posted by the Food and Drug Administration (FDA), states, "Associated Milk Producers Inc. (AMPI) of New Ulm, Minn., is recalling dry whey powder packaged in 50-pound and 25-kg bags that were produced at the cooperative's Blair, Wis., dry whey plant from May 1-5, 2018; May 24-29, 2018; June 2-5, 2018; and June 7-14, 2018 due to the potential to be contaminated with *salmonella.*"

13. *Salmonella* is an enteric bacterium, which means that it lives in the intestinal tracts of human and other warm-blooded animals.

14. *Salmonella* bacteria are usually transmitted to humans who consume contaminated foods. Such foods usually look and smell normal, meaning that a consumer has no warning of the fact of contamination.

15. After being ingested, *Salmonella* bacteria travel to the lumen of the small intestines, then penetrate the epithelium, multiply, and enter the blood. This infection process, also referred to as the incubation period, usually takes 6 to 72 hours for the onset of symptoms. As few as 15-20 cells of *Salmonella* bacteria can cause infection.

16. The acute symptoms of *Salmonella* gastroenteritis include the sudden onset of nausea, vomiting, abdominal cramping, fever, and diarrhea. There is no real cure for *Salmonella*

infection. Medical treatment provided to an infected person typically involves treatment of the symptoms.

17. *Salmonella* gastroenteritis can also result in a variety of well-documented long-term health issues, including reactive arthritis (Reiter's syndrome), inflammatory bowel syndrome, abscess, and immunological deficiencies.

18. On July 20, 2018, Plaintiffs mother purchased Goldfish® crackers from Target in Olive Branch, Mississippi.

19. On July 19, 2018, Plaintiff consumed the Goldfish® crackers. That same night she became extremely ill with nausea, vomiting, and diarrhea.

20. On July 23, 2018, Plaintiff was hospitalized due to *Salmonella* poisoning, and her diagnosis was confirmed by laboratory testing.

21. As a direct result of the fault of Defendants, Plaintiff contracted *Salmonella* illness and suffered harms and losses including, but not limited to, hospital, rehabilitation, pharmacy and other medical expenses; mental and physical pain; emotional distress; disability; future medical care; future disability; lost wages and loss of future earning capacity; and other damages as proved at trial.

## FIRST CAUSE OF ACTION
## STRICT LIABILITY-MANUFACTURING DEFECT

22. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

23. The adulterated food products, specifically the dry whey powder and Goldfish® crackers, which Defendants manufactured, distributed, and/or sold and Plaintiff consumed were defective and unreasonably dangerous at the time the products left Defendants' control.

24. Defendants knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the defective nature and dangerousness of their products.

25. The products were defective and unreasonably dangerous because they failed to perform as safely as an ordinary consumer would expect when the product was used in a reasonably foreseeable manner.

26. Defendants' products reached Plaintiff without substantial change m their conditions.

27. Plaintiff could have not reasonably discovered the defects and risks associated with Defendants' products before or at time of consumption.

28. Defendants manufactured, delivered, and/or sold contaminated food products to the Plaintiff and are therefore strictly liable to the Plaintiff for all injuries and damages proximately caused by Plaintiffs exposure to Defendant's defective and unsafe products under Mississippi and other applicable law.

29. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

## SECOND CAUSE OF ACTION
## STRICT LIABILITY-FAILURE TO WARN

30. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

31. The adulterated food products, specifically the dry whey powder and Goldfish® crackers, which Defendants manufactured, distributed, and/or sold and Plaintiff consumed were defective and unreasonably dangerous at the time the products left Defendants' control.

32. The products were defective and unreasonably dangerous because Defendants knew, or should have known, that the products did not provide adequate warnings of the danger and did not contain proper instructions for reasonably safe human consumption.

33. Defendants' products reached Plaintiff without substantial change m their conditions.

34. As a result of their inadequate warnings, Defendants products were defective and unreasonably dangerous when they left the possession and/or control of Defendants, were distributed by Defendants, and used by Plaintiff.

35. Had Defendants provided adequate warnings and instructions and properly disclosed and disseminated the risks associated their products, Plaintiff could have avoided the risks of developing injuries as alleged herein.

36. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

## THIRD CAUSE OF ACTION
## NEGLIGENCE AND GROSS NEGLIGENCE

37. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

38. Defendants owed a duty to the Plaintiff to use reasonable care in the manufacture of their food products, which duty would have prevented or eliminated the risk that Defendants' food products would become contaminated with *Salmonella* or any other dangerous pathogen. Defendants breached this duty.

39. Defendants owed a duty to the Plaintiff to use reasonable care in the distribution and sale of their food products, which duty would have prevented or eliminated the risk that

Defendants' food products were contaminated with *Salmonella* or any other dangerous pathogen. Defendants breached this duty.

40. Defendants had a duty to properly supervise, train, and monitor their respective employees, and to ensure their compliance with all applicable statutes, laws, regulations, or safety codes pertaining to the manufacture, distribution, storage, and/or sale of food products, but they failed to do so and were therefore negligent.

41. Defendants had a duty to use ingredients, supplies, and other constituent materials that were reasonably safe, wholesome, free of defects, and that otherwise complied with applicable federal, state, and local laws, ordinances, and regulations, and that were clean, free from adulteration, and safe for human consumption, but they failed to do so and were therefore negligent.

42. Defendants had a duty to exercise reasonable care to test, manufacture, and sell reasonably safe food products so as not to subject the ultimate consumer to unreasonable risk of harm.

43. Defendants were negligent, careless, reckless, grossly negligent, and wanton in the manufacture, distribution and/or sell of their food products in all of the following respects:

(a) By manufacturing, inspecting, marketing, distributing, selling, and/or supplying food products in such a way that persons using the products would be subjected to unreasonable danger;

(b) By failing to test food products to ensure that they were not harmful;

(c) By failing to warn users of the fact that food products were tainted with *Salmonella* bacteria;

(d) By failing to utilize a proper manufacturing process which would eliminate the *Salmonella* bacteria so that it did not reach the end user;

(e) By failing to train, supervise, or monitor such workers at their plants to ensure that the manufacturing and distribution processes would be handled in a reasonable and safe manner and thus eliminating the risk to the end user of *Salmonella* exposure;

(f) By placing and/or permitting the placement of food products into the stream of commerce when Defendants knew or should have known of the defective nature of the products;

(g) By failing to properly and adequately test and inspect the food products to determine their safety;

(h) By failing to employ corrective safety mechanisms to limit the defective nature of the food products;

(i) By manufacturing, inspecting, marketing, distributing, selling, and/or supplying food products which were unsafe for their intended use;

(j) By failing to supply food products which were free of defect and were fit and safe in all respects for their intended and foreseeable use;

(k) By manufacturing, inspecting, marketing, distributing, selling, and/or supplying food products in an unsafe condition;

(l) By failing to keep abreast of and/or react appropriately to public, government, and/or industry studies, information, documentation and recommendations, consumer complaints and reports, and/or other information regarding the defective nature of the food products;

(m) By failing to use due care under the circumstances.

44. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

**FOURTH CAUSE OF ACTION**
**NEGLIGENCE *PER SE***

45. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

46. Defendants had a duty to comply with all applicable state and federal regulations intended to ensure the purity and safety of their food products, including the requirements of the Federal Food, Drug and Cosmetics Act (21 U.S.C. § 301 *et seq.),* and the Mississippi Food Protection Regulations.

47. Defendants failed to comply with the provisions of the health and safety acts identified above, and, as a result, were negligent *per se* in their manufacture, distribution, and/or sale of food products adulterated with *Salmonella,* a deadly pathogen.

48. Defendants had a duty to abide by certain federal and state regulations in the manufacture and distribution of food products.

49. The federal and state regulations are minimum standards of care which Defendants must abide by to ensure their food products were safe for human consumption.

50. Defendants failed to abide by the standards, rules, and regulations promulgated by the United States Government and the State of Mississippi in their manufacture and distribution of food products.

51. The rules and regulations promulgated by the United Sates Government and the State of Mississippi were specifically enacted for the benefit of the class of persons for which Plaintiff was a member.

52. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

**FIFTH CAUSE OF ACTION**
**BREACH OF WARRANTY**

53. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

54. Defendants expressly warranted that their food products were safe for consumption and fit for the purpose for which they were manufactured, produced, sold and/or intended to be used through representations made in advertising and in the sales processes.

55. Defendants breached those express warranties since the food products were not merchantable, safe for use, nor fit for their particular purposes.

56. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

**SIXTH CAUSE OF ACTION**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**MS Code § 75-2-314**

57. Plaintiff reasserts and re-alleges each and every matter and thing as set forth in the preceding paragraphs.

58. In manufacturing, promoting, distributing, selling and/or otherwise placing the food products into the stream of commerce, Defendants impliedly warranted that their products were merchantable and fit for their intended uses.

59. The food products were not merchantable and were unreasonably dangerous in the course of normal use.

60. The food products were not fit for their particular purposes and had the capacity to be unsafe and defective.

61. Defendants breached those implied warranties since the food products were not merchantable, safe for use, nor fit for their particular purposes.

62. As a result of the fault of Defendants, Plaintiff suffered harms and losses as described in the preceding paragraphs.

## PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendants, awarding as follows:

A. Compensatory damages in the form of medical expenses, out-of-pocket expenses, lost earnings, and other economic damages in an amount to be proven at trial;

B. Compensatory damages for pain and suffering, emotional distress, loss of enjoyment of life, and other non-economic damages in an amount to be determined at trial;

C. Punitive damages for the gross negligence, wanton, willful, fraudulent, and reckless acts of the Defendant who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to the Plaintiff in an amount sufficient to punish Defendant and deter future similar conduct, to the extent allowable by applicable law;

D. Pre- and post-judgment interest;

E. Costs including attorneys' fees, court costs, and other litigation expenses; and

F. Any other relief that this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues.

Respectfully Submitted,

**KRISTEN LAMBERT**

By: ______________________
CASEY L. LOTT, MBN 101766
Attorney for the Plaintiffs

**LANGSTON & LOTT, PLLC**
100 South Main Street
Post Office Box 382
Booneville, MS 38829
Telephone: (662) 728-9733
Facsimile: (662) 728-1992